

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

December 11, 2020

**BY ECF**
The Honorable Laura Taylor Swain
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

      Re:    *United States v. Milton Chardon*, S1 18 Cr. 319 (LTS)

Dear Judge Swain:

      The Government respectfully submits this letter in advance of the sentencing of Milton Chardon (the "defendant"), which is scheduled for December 18, 2020. As explained below, the Government respectfully submits that a sentence within the range of 151 to 188 months' imprisonment (the "Stipulated Guidelines Range"), as called for the United States Sentencing Guidelines (the "Guidelines" or "U.S.S.G"), should be imposed in this case.

## I.    **Offense Conduct**

      This case arises out of a long-term investigation into a network of thieves operating in the vicinity of Dyckman Street in northern Manhattan. Members of this network made money by robbing drug dealers, stealing from drug dealers through deception, burglarizing commercial establishments, and narcotics sales. This network consisted of members of a local street gang known as "the 200," as well as members of local robbery and burglary crews who were not members of the 200 but occasionally committed crimes with the gang's members. Participants in this network also frequently engaged in a practice they referred to as "breaking" wholesale drug traffickers. The defendants in this case would "break" these victims by passing off either fake money to purchase real drugs, or fake drugs in exchange for real money. (*See generally* PSR ¶¶ 35-38.)

      The defendant's drug activity included, together with his co-conspirators, the sale of kilogram weights of cocaine. Much of the drug weight sold by the defendant and his co-conspirators was obtained through violent robberies, discussed further below. In addition, the defendant and his co-conspirators maintained their drug business through "breaking." The defendant, as the founder and leader of the 200, also played a leadership role in the drug business. (*See generally* PSR ¶ 57.)

      In addition to the drug activity, the 200 has been embroiled in violent rivalries with other Manhattan street gangs, and its members have committed murder, shootings and robberies.

Between at least 2014 through approximately 2016, the 200 was feuding with a nearby street gang whose territory focused on the area around 193rd Street in Manhattan. That rival gang referred to itself as "193," and controlled drug sales, including sales of heroin, crack, marijuana, and pills, in its territory. This rivalry resulted in a series of retaliatory shootings, as well as the October 2, 2014 murder of an innocent civilian named Orlando Rivera. During that shooting, the 200s fired at least fifteen shots from two firearms, killing Rivera and wounding two others. The 193-200 rivalry came to a head in the summer of 2016 when 193 members went to Dyckman armed with multiple firearms and opened fire on 200 members in the area. At least one 200 member returned fire, wounding a 193 member. (*See generally* PSR ¶ 37.)

The defendant was the founder and the leader of the 200 gang. As the leader, he recruited individuals to join the 200 and promoted individuals to higher status within the gang. The defendant also served as the representative for the 200 at meetings with rival gangs where disputes were discussed. The defendant's commitment to the 200 is reflected in his tattoo on his neck, which states "200," and he flaunts his rank within the gang in his social media profiles, which proclaim him to be the "Big 200." (*See generally* PSR ¶ 50.)

As a leader of the 200, the defendant engaged in violence, including by participating in multiple non-fatal shootings. The defendant played a critical role in those shootings. For example, in 2014, the defendant himself fired shots during a shootout, hitting one individual in the lower body. On another occasion, which occurred in July 2017, the defendant fired multiple gun shots at one of his co-defendants, Samantha Batista and her associate. This shooting was over a dispute between Batista and the defendant, who had previously done robberies together. When the defendant was not himself the shooter, he still provided a critical role. For example, in a December 2015 shooting, the defendant did not himself fire the gun, but he provided the gun to his co-defendant, Yasmil Fertides, who fired multiple shots at the victim. (*See generally* PSR ¶¶ 51-53.)

In addition to the non-fatal shootings, the defendant participated in a number of violent robberies. These robberies were critical to the success of the narcotics conspiracy and the 200's reputation. In November 2016, the defendant participated in an assault and robbery with other 200 members, which they were paid to carry out. During the assault, one of the defendant's co-conspirators brandished a firearm and the victim was slashed. The defendant also participated in a 2017 robbery of a wholesale drug supplier in Manhattan with his co-defendant, Yasmil Fertides and another individual. The defendant participated by luring the victim to a particular location under the guise of arranging a purchase of a kilogram of cocaine. Fertides hid a firearm at the location where the transaction was supposed to take place. When the Victim arrived at the designated location and met the defendant, Fertides came out, brandished the gun and stole the cocaine from the victim. Although the group expected to receive a kilogram of cocaine, they only received approximately 400 grams. (*See generally* PSR ¶¶ 54-55).

Finally, the defendant has also participated in multiple commercial burglaries with members and associates of the 200, including pharmacy burglaries. Among others, the defendant twice burglarized the same pharmacy in the Bronx in October 2016. The defendant then supplied pills stolen from that pharmacy to other individuals for resale. (*See generally* PSR ¶ 56.)

## II.    The Defendant's Plea and Applicable Guidelines Range

On or about September 12, 2018, superseding indictment S1 18 Cr. 319 (LTS), charging the defendant as well as several of his cohorts, was unsealed (the "Indictment"). (PSR ¶ 1.)  In particular, the defendant was charged with participating in (1) a racketeering conspiracy from at least 2014 through September 2018, (2) an attempted murder and a firearms offense in connection with a shooting that occurred on December 15, 2017, (3) a narcotics conspiracy between 2011 and 2018 to distribute and possess with intent to distribute 500 grams or more of cocaine and mixtures and substances containing a detectable amount of marijuana, (4) a robbery conspiracy between 2011 and 2018, (5) a pharmacy burglary conspiracy between 2011 and 2018, and (6) a narcotics conspiracy between 2011 and 2018 to distribute and possess with intent to distribute mixtures and substances containing oxycodone.  (PSR ¶¶ 1-14.)  The defendant was arrested on or about September 12, 2018 and has been detained since.  (PSR ¶ 60.)

On October 23, 2020, the defendant pled guilty, pursuant to a plea agreement with the Government, to Count Eight of the Indictment, which charged him and others with conspiring to distribute and possess with the intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1).  In particular, the defendant was charged in conspiring to distribute 500 grams or more of cocaine, in violation of Title 21, United States Code, Section 841(b)(1)(B), and mixtures and substances containing a detectable amount of marijuana, in violation of Title 21, United States Code, Section 841(b)(1)(D).  (PSR ¶ 10.)

In the plea agreement, the parties agreed that the Guidelines range applicable to the defendant is 151-188 months' imprisonment, with a mandatory minimum term of imprisonment of 60 months' imprisonment.  (PSR ¶ 22.)  The Probation Office agrees and recommends a sentence of 120 months' imprisonment.  (PSR Sentencing Recommendation at 30.)

## III.    Discussion

### A.  Applicable Law

Although the Guidelines are not mandatory, they provide important guidance to the Court following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005).  "[A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark."  *Gall v. United States*, 552 U.S. 38, 49 (2007).  After making the initial Guidelines calculation, a sentencing judge must consider the factors outlined in Title 18, United States Code, Section 3553(a), and "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing outlined in 18 U.S.C. § 3553(a)(2).

### B.  Analysis

The Government respectfully submits that a sentence within the Stipulated Guidelines Range of 151 to 188 months' imprisonment is sufficient, but not greater than necessary to accomplish the goals of sentencing in this case.

*First*, the nature and circumstances of the defendant's offense conduct weigh heavily in favor of a Guidelines sentence.  For at least eight years, the defendant earned money by dealing drugs—drugs that he frequently obtained through violent robberies of drug dealers.  The Stipulated Guidelines Range factors in the defendant's use of violence and gun possession in connection with the narcotics conspiracy.  This violence was not ancillary or occasional.  Instead, the violent robberies committed by the defendant and his co-conspirators, as well as the culture of fear that the defendant created through the 200s, was critical to the success of the drug conspiracy and pervasive in the defendant's life.

As discussed above, as the founder and leader of the 200s, the defendant managed, publicized and grew the gang—a gang that was responsible for a murder of an innocent civilian.  The defendant was also more than just the symbolic leader of the gang, he also participated in the violence himself.  On at least two occasions, in 2014 and 2017, the defendant himself was the shooter during an attempted murder.  On another occasion, which occurred in 2015, the defendant provided the firearm to the shooter.  These incidents reflect the defendant's willingness to put his own interests above the lives of others.  These shootings not only terrorize the intended victims, but also the thousands of innocent people who live in proximity to 200s territory.  In addition to the shootings, the defendant participated in violent robberies and commercial burglaries which further demonstrate his lack of respect for the law.

*Second*, the defendant's history and characteristics likewise weigh in favor of a sentence within the Stipulated Guidelines Range.  The defendant was previously convicted for kidnapping in connection with an arrest that occurred when he was 16 years old.  This conviction resulted in a three year term of incarceration.  According to the defendant, during this period of incarceration, the defendant was "second in command" of the Trinitarios gang at the facility.  (PSR ¶ 81.)  After the defendant's release, his criminal activity only escalated.  This history reflects that the defendant—now 28 years old—has been engaged in criminal activity for over a decade.  The defendant acknowledged to the Probation Office that he understands the danger of his lifestyle and the risks associated with it, (PSR ¶ 95), but his actions demonstrate that he has chosen to assume that risk and ignore the harm that his lifestyle causes other people in order to make money and achieve his own goals.  Countless people have been harmed by that choice.

*Third*, a sentence within the Stipulated Guidelines Range is needed to adequately punish the defendant, protect the public and demonstrate the seriousness of his conduct.  The defendant's drug conspiracy has seriously harmed an unknown number of drug users and addicts, not to mention the victims of the defendant's acts of violence and the thousands of citizens who have had to navigate life in the 200s territory.  These individuals must live their lives knowing that a gang member may commit another robbery, burglary or shooting at any time.  Such a sentence is also needed to promote respect for the law and deter the defendant from future crimes—a goal that was not accomplished by his prior arrest and three year term of incarceration.  Looking beyond the defendant himself, in a case like this—where the defendant was a leader of a public and violent gang and drug conspiracy—there is a very significant need to deter others by showing that such crimes will result in substantial sentences when prosecuted in federal court.

IV.     **Conclusion**

Accordingly, the Government respectfully requests that the Court impose a sentence within the Stipulated Guidelines Range of 151 to 188 months' imprisonment.

Respectfully submitted,

AUDREY STRAUSS
Acting United States Attorney

by:    /s/ Jamie Bagliebter
Jamie Bagliebter
Maurene Comey
Assistant United States Attorneys
(212) 637-2236

cc:     Counsel of Record (by ECF)